IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MURPHY OIL USA, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § § | |
| LOVE'S TRAVEL STOPS & COUNTRY STORES, INC., GEMINI MOTOR TRANSPORT, MUSKET CORPORATION, STANLEY BOWERS, SCOTT DODD, LARRY JONES, MICHAEL WOOD, ROY TAYLOR, MATT TUGMAN, EDWARD WASHINGTON, and ALAN SVAJDA. | § § § § § § § § § § | Civil Action No. 3:18-cv-1345-M |
| Defendants. | § § | |

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT
OF MOTION TO ALTER OR AMEND JUDGMENT**

Plaintiff Murphy Oil USA, Inc. ("Murphy") files its Motion to Alter or Amend Judgment (Dkt. 96) and would show the Court as follows:

**1.**

**INTRODUCTION**

The Court committed manifest error when it embarked on an analysis of the events underlying this action and treated them as voluntary commercial transactions, when in fact the summary judgment record clearly shows Defendants deliberately stole 220,000 gallons of Murphy-branded diesel and delivered them to Love's Travel Stops for sale to Love's customers. The opinion compounded its error when it then calculated Murphy's "profit" from the theft, which it calculates from unauthenticated "evidence" of the price Murphy would have charged had it been a willing seller (which it clearly was not) and without the context of a hurricane disrupting the

availability of wholesale diesel fuel. The opinion incorrectly assumes without any evidence whatsoever what Murphy's profit margin would have been if these were ordinary, voluntary transactions in a normal industry environment.

Even if the posted wholesale prices had any application to the stolen fuel at issue, there is nothing in the record from which to calculate Murphy's costs for that same fuel. Had there been, at best the only calculation possible would be Murphy's theoretical gross profit and does not account for general overhead and related expenses, which are nowhere in the record. Without all of that information it is impossible to calculate Murphy's net profit, yet that is precisely what the opinion purports to have done.

The opinion also manifestly reflects procedural error as well. Its analysis is clearly predicated on an offset defense, which Defendants did not raise as a basis for summary judgment and would not have fit if they had. From that analysis it concludes that Murphy waived its right to proceed with suit, plainly ignoring summary judgement evidence to the contrary.

Murphy has alleged and included in its summary judgment record that the amount and type of damages it is pursuing go beyond recoupment of the wholesale cost of the stolen diesel. Those allegations and evidence leave myriad fact issues for a jury. The judgment should be vacated and the case set for trial.

**2.**

**ARGUMENTS AND AUTHORITIES**

Under Federal Rule of Civil Procedure 59(e), the Court may alter or amend a final judgment where the movant establishes "either a manifest error of law or fact or . . . present[s] newly discovered evidence." *Krohn v. Spectrum Gulf Coast, LLC*, Civ. A. No. 3:18-CV-2722-S, 2019

WL 6841620, at *1 (N.D. Tex. Dec. 13, 2019) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Id.* (citing *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)) (internal quotation marks omitted).

The Court committed manifest error in purporting to calculate Murphy's profits on the stolen diesel fuel when the facts required to do so were not in the record. The Court further erred in comparing its purported profits calculation against Murphy's actual net profits for fuel sold at it stores to find that Murphy suffered no damages under the offset doctrine. Independently, the Court committed manifest error of law by "grant[ing] summary judgment *sua sponte* on grounds not requested by the moving party," *i.e.*, Defendants' offset defense. *Fleming v. Tunica Cty. Miss.*, 497 F. App'x 381, 384–85 (5th Cir. 2012).

**2.1** **The Court Manifestly Erred In Calculating Murphy's Profit Margin.**

**2.1.1** **Information Needed to Calculate Murphy's Profits Are Not In The Record.**

The Court found as a matter of law that Murphy "received a $0.29 profit margin from the invoices the defendants paid." Order, Dkt. 96, at 5. It arrived at that finding by accepting Defendants' assertion that Murphy charged a "special price" that "was up to $0.29 higher per gallon than Murphy's publicly posted price." Dkt. 35 at 23. Defendants cite to an unauthenticated spreadsheet listing Murphy's publicly posted prices for wholesale diesel at the Frost Terminal. *Id*. Defendants do not provide any evidence as to Murphy's profit margin on the diesel they stole. The Court, however, undertook that task on its own, calculating the difference between the publicly posted prices at the Frost Terminal on the days Defendants stole the fuel from the amount Murphy drafted from Defendants' account. Order at 5. That is a manifestly incorrect method to determine Murphy's profit margin.

The Court's attempt to measure Murphy's profit margin is at best only a calculation of its gross profit per gallon, as it subtracted the total amount of money Murphy received when drafting Defendants' account from the posted price, which the Court apparently used as the fuel's cost. But the Court did not have actual evidence before it demonstrating the cost of goods sold. For example, there is no evidence as to what Murphy paid for the fuel, what Murphy's transportation costs were in moving the fuel to the Frost Terminal, or any storage costs for keeping the fuel at the terminal. All of those items are necessary for a gross profit calculation.

Moreover, for the Court to ascertain whether Murphy sustained damages it would also need to go one step further and calculate its net profits. The Court did not, and could not, undertake that analysis because there was no information in the record essential to that calculation. For example, the Court would need to know Murphy's operating expenses, general and administrative expenses, depreciation, interest, taxes, and other expenses attributable to the stolen fuel. The Court's opinion cannot be said to have even attempted to ascertain those facts—because none of them are in the record.

### 2.1.2   Comparing Murphy's Purported Gross Profits To Its Net Profits Is Improper.

Not only does the opinion err in purporting to calculate Murphy's profits per gallon for the diesel it drafted from Defendants' account, that error leads directly to a finding of complete offset. If the Court does not have the information on which to calculate Murphy's net profits it follows inescapably that it cannot therefore find complete offset.

Nonetheless, the Court improperly used Murphy's actual net profit for fuel and related merchandise sold at its stores to compare to the purported gross profit it calculated Murphy to have received from drafting Defendants' account. That is fundamentally flawed, as it is not an apples to

apples comparison.  Gross profits are greater than net profits because numerous expenses (like those previously enumerated) have not been deducted.  As a result, the Court cannot conclude that "the upcharge is more than Murphy's claimed actual damages."  Order at 5.  The only way for the Court to have reached that conclusion would have been to calculate Murphy's net profits from drafting Defendants' account for the stolen diesel and compared it to the net profits for fuel sold at Murphy's stores.  The parties did not brief that issue and the record is devoid of the necessary information.

As a result, the Court could not have determined as a matter of law whether Murphy sustained damages or applied the offset doctrine.

### 2.1.3   The Posted Price Is Irrelevant to the Stolen Diesel.

There is no dispute that posted prices are the prices that a wholesaler charges for fuel being sold at a given terminal.  Murphy, however, was not selling any diesel fuel at the Frost Terminal on the days in question.  Instead, all of Murphy's diesel fuel was expressly not for sale, and was "branded," meaning it was only to be taken to Murphy stores.  Dkt. 60-1, App. 13, Ridings Dec., ¶ 4.  As a result, the posted price that Defendants cite and the Court uses have no meaning, and are not connected in any meaningful way to the fuel taken.  Notably, the diesel was taken in the midst of a hurricane that significantly disrupted the Gulf Coast and the availability of wholesale diesel.  The posted prices do not in any way reflect that situation because there was no need—they were irrelevant to Murphy given that no diesel was being offered for sale.

The "special price" to which Defendants refer was a manual calculation Murphy performed after it discovered Defendants' theft.  Murphy made the calculation by surveying the market to determine the wholesale price at which others had sold diesel during that time of crisis. Dkt. 60-1,

App. 17, Rice Dec., ¶ 2. Not surprisingly, the market price for wholesale diesel during and after a hurricane and resulting shortages is higher than during normal times.

As a result, the "posted price" that is relevant to the diesel Defendants stole is the price charged: $2.1018 per gallon, not the unrelated "posted price" referenced in Defendants' summary judgment motion.

## 2.2 Defendants Did Not Move For Summary Judgment On Their Offset Defense.

It is well-settled that a district court can grant summary judgment only on grounds the moving party requests. *See Fleming*, 497 F. App'x at 384-85; *see also Baker v. Met. Life Ins.*, 364 F.3d 624, 632 (5th Cir. 2004) (vacating order granting summary judgment granted on grounds neither party raised). Though the Court couched its ruling in terms of waiver, its decision ultimately rested on Defendants' right to offset any judgment that may be rendered against them. Specifically, the Order stated:

> [Plaintiff] alleges it sustained $42,911 damages, which accounts for lost profits it would have made selling the fuel along with profits from projected merchandise sales to individuals stopping at its stores. Taken together, these present a total lost profit margin of $0.195 per gallon. If the defendants are ultimately liable under the [Texas Theft Liability] Act, they would be entitled to *offset* any judgment equal to the amount paid, which includes the full value of the fuel plus the $.29 per gallon upcharge. Because the upcharge is more than [Plaintiff's] claimed actual damages, the result would be a take-nothing judgment.

Order 4-5 (emphasis added); *see also id.* 6 ("[T]he offsetting benefit rule entitles a defendant to an offset even when the plaintiff receives a benefit from a non-party that it would not otherwise have received but for the unlawful act.").

Offset is an affirmative defense that Defendants must plead and prove. *Brown v. Am. Transfer and Storage Co.*, 601 S.W.2d 931, 936 (Tex. 1980); *see also Mays v. Bank One, N.A.*, 150 S.W.3d 897, 899 (Tex. App.—Dallas 2004, no pet.) ("The burden of pleading and proving

facts necessary to support an affirmative defense of offset rests on the party making the assertion."). Defendants did not move for summary judgment on their offset defense. Rather, they argued as follows:

> Plaintiff's claims . . . are precluded by (1) the economic loss rule, (2) the affirmative defense of waiver, and (3) failure of the essential element of damages. Defendants also seek summary judgment on [Plaintiff's] conversion claim, for failure to satisfy its demand and refusal elements; on [Plaintiff's] unjust enrichment claim, because it is not an independent cause of action; and on [Plaintiff's] conspiracy claim, as an unsupported derivative tort.

*See* Defs.' Br. in Support of Mot. for Summ. J. 2, ECF No. 35. Indeed, the word "offset" does not appear in Defendants' Motion for Summary Judgment. *See generally id.* Because Defendants did not (and could not) prove that they are entitled to any affirmative relief with respect to their offset defense, any finding in their favor with respect to offset at the summary judgment stage is improper. *Fleming*, 497 F. App'x at 384-85.

### 2.3     Without Considering "Offset," The Court's Reasoning On Waiver Fails.

If the Court had properly precluded offset from its analysis, it could not have determined that Plaintiff waived its right to file suit. *See* Order 5-9. As the Court stated, waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." Order 3 (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003)). "Waiver is largely a matter of intent, and for implied waiver to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Id.* "There can be no waiver of a right if the person sought to be charged with waiver says or does nothing inconsistent with claiming a known right." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 485 (Tex. 2017). Defendants do not argue that Plaintiff expressly waived its rights. *See generally* Defs.' Br. in Support of Mot. for Summ. J., Dkt. No. 35. Therefore, the only relevant question is whether

Plaintiff's conduct in drafting Defendants' account for the stolen diesel fuel was "unequivocally inconsistent with claiming a known right." *Bradberry*, 526 S.W.3d at 485. That is a disputed issue of fact.

Under Texas law, the mere act of accepting a payment does not amount to waiver of a right to sue. *Watson v. Houston Indep. Sch. Dist.*, No. 14-03-01202-CV, 2005 WL 1869064, at *4 (Tex. App.—Houston [14th Dist.] Aug. 9, 2005, no pet.) (holding the acceptance of a one-time cash payment did not waive right to sue); *see also Neiman-Marcus Grp., Inc. v. Dworkin*, 919 F.2d 368 (5th Cir. 1990) (absent evidence of an express or implied agreement to the contrary, a former employee was not estopped from suing for breach of contract even though he accepted monthly paychecks after being terminated).

Here, Plaintiff disputes by drafting Defendants' account for the cost of the stolen diesel fuel it waived its right to proceed with this action. Murphy's actions in unilaterally drafting Defendants' account within days of the theft followed shortly by a demand letter seeking recovery of its damages demonstrates actions that are not "unequivocally inconsistent" with an intent to bring this lawsuit. *See* Dkt. 60-1, App. 3-4, Downum Dec., ¶ 5.

The Court's waiver finding in its Order was predicated on the erroneous assumption that Murphy choose "to forgo litigation in favor of billing the defendants for the fuel at a rate beyond any actual damages suffered." Order at 5. The Court's basis for that statement is its belief that Murphy received a $0.29 profit margin on the stolen diesel, which is greater than its profit margin on fuel that travels to Murphy's stores to be sold to its customers. As explained in detail above, there is no evidence before the Court concerning Murphy's profit margin on the stolen fuel. Plus, that reasoning is based on offset—not waiver.

Even assuming Plaintiff's conduct waived its right to recover damages *for the diesel fuel itself*, it could not be held to have waived its right to recover consequential damages, including merchandise sales at Murphy's stores. Similarly, and perhaps most importantly, Plaintiff's conduct could not be found to have waived its right to seek exemplary damages pursuant to Chapter 41 of the Texas Civil Practice and Remedies Code and Chapter 31 of the Texas Penal Code.  *See* Pl.'s Second Am. Compl. ¶¶ 6.2-6.3, Dkt. No. 22.[1]

That is true despite the Court's finding that Plaintiff received a $0.29 profit margin from drafting Defendants' account.  Therefore, the Motion to Amend should be granted on that basis alone.

### 3.

### CONCLUSION

Based on the foregoing, Murphy asks that the Court Alter or Amend its December 10, 2020 Memorandum Opinion and Order and deny Defendants' Motion for Summary Judgment.

    Respectfully submitted,

    /s/ Brian H. Oates
    Mark T. Josephs (TSBN 11031400)
    mjosephs@jw.com
    Brian H. Oates (TSBN 24088144)
    boates@jw.com

    JACKSON WALKER LLP
    2323 Ross Avenue, Suite 600
    Dallas, TX 75201
    T: (214) 953-6000
    F: (214) 953-5822

    *Attorneys for Plaintiff Murphy Oil USA, Inc.*

---

[1] The Court did not address or otherwise analyze how Plaintiff waived its right to recover exemplary damages for Defendants' unconscionable actions.

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT
OF MOTION TO ALTER OR AMEND JUDGMENT** – Page 9

## CERTIFICATE OF SERVICE

This is to certify that on this 6th day of January, 2021, a true and correct copy of the foregoing document was served via the Court's ECF system on all counsel of record.

/s/ Brian H. Oates
Brian H. Oates

24448455v.1

**PLAINTIFF'S MOTION AND BRIEF IN SUPPORT
OF MOTION TO ALTER OR AMEND JUDGMENT – Page 10**