UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MURPHY OIL USA, INC., § § *Plaintiff,* § § v. § § LOVE'S TRAVEL STOPS & § COUNTRY STORES, INC.; GEMINI § MOTOR TRANSPORT; MUSKET § CORPORATION; STANLEY § BOWERS; SCOTT DODD; LARRY § JONES; MICHAEL WOOD; ROY § TAYLOR; MATT TUGMAN; § EDWARD WASHINGTON; and § ALAN SVAJDA, § § *Defendants.* § | Civil Action No. 3:18-CV-01345-X |

## **MEMORANDUM OPINION AND ORDER**

In 2018, Murphy Oil USA, Inc. (Murphy) sued Love's Travel Stops & Country Stores, Inc. (Love's), Gemini Motor Transport (Gemini), Musket Corporation, and eight individual fuel-carrier drivers for civil theft, conversion, and unjust enrichment stemming from an alleged conspiracy to steal diesel fuel during Hurricane Harvey. The Court granted the defendants' motion for summary judgment and found that: (1) Murphy waived its Texas Theft Liability Act claim; (2) Murphy waived its conversion claim; (3) Murphy's theory of unjust enrichment was unavailable; and (4) Murphy could not recover for civil conspiracy because it is a derivative tort, and Murphy waived all primary claims. The defendants then moved for attorneys' fees and costs in the amount of $1,046,563.48, as well as conditional appellate fees. [Doc.

1

No. 101]. Because the Court finds that the defendants properly segregated the fees (to the extent segregation was necessary) and that the fees were not unreasonable, it **GRANTS** the defendants' motion for attorneys' fees and costs.

## I. Factual Background

The Court discussed much of the relevant background information in prior orders, and it declines to reiterate it here. Instead, the Court outlines only those facts relevant for the resolution of the motion for fees and costs.

The defendants assert that they are entitled to recover over $1 million in fees and costs. Not surprisingly, Murphy asserts that seeking over $1 million for a controversy valued at about $42,000 is unreasonable. Murphy's argument has three components: (1) Love's did not prevail on liability under the Texas Theft Liability Act and therefore cannot recover the fees mandated by that statute; (2) Love's fees were unreasonable and unnecessary; and (3) there are issues with the lodestar.

But the defendants claim that: (1) the Court's determination that Murphy waived its Texas Theft Liability Act claim enables the defendants to recover under the statute; (2) the fees were reasonable and necessary; and (3) the lodestar actually *underestimates* the fees owed to the defendants by about half a million dollars.

## II. Legal Standard

The Texas Theft Liability Act provides that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorney's fees."[1]   Because "[s]tate law controls both the award of and the

---

[1] TEX. CIV. PRAC. & REM. CODE § 134.005(b).

2

reasonableness of fees awarded where state law supplies the rule of decision," Texas law applies.[2] Fee awards under the Texas Theft Liability Act are mandatory.[3] When lawsuits advance both recoverable and unrecoverable claims, "a claimant must segregate recoverable from unrecoverable fees."[4] But "when discrete legal services advance both a recoverable and unrecoverable claim" the services are "so intertwined that they need not be segregated."[5] To determine the reasonableness of attorneys' fees, courts look to eight factors identified by the Texas Supreme Court in *Arthur Andersen & Co. v. Perry Equip. Corp.*:[6]

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood . . . that the acceptance of particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[7]

To determine the amount of fees and costs awarded, the Court must determine the lodestar. The lodestar is the number of hours reasonably expended multiplied by

---

[2] *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

[3] *See* TEX. CIV. PRAC. & REM. CODE § 134.005(b) (stating that a prevailing party "*shall* be awarded court costs and reasonable and necessary attorney's fees").

[4] *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313–14 (Tex. 2006).

[5] *Id.*

[6] 945 S.W.2d 812 (Tex. 1997).

[7] *Id.* at 818.

the prevailing hourly rate in the community for similar work.[8] "In calculating the lodestar, the court should exclude all time that is excessive, duplicative, or inadequately documented."[9] The Supreme Court of Texas has recognized that "the base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations."[10]

### III. Analysis

*1. The defendants are prevailing parties.*

Murphy claims that because this Court did not render a "merits" decision with respect to the Texas Theft Liability Act claim, the defendants did not "prevail" within the meaning of the statute. Therefore, Murphy argues, the defendants may not recover attorneys' fees and costs. Murphy cites to two cases to support its position: *Brinson Benefits, Inc. v. Hooper*[11] and *Travel Music of San Antonio, Inc. v. Douglas*.[12]

In *Brinson Benefits*, the court noted that "to recover fees, the defendant must nevertheless prevail on the merits of the claim, which *one court* has interpreted to mean establish [it] did not commit theft."[13] Importantly, this statement was dicta and merely highlighted the opinion of a single court. The court held that the "widely accepted definition" of prevailing party is "'[t]he party to a suit who successfully prosecutes the action or successfully defends against it, even though not necessarily

---

[8] *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 391 (5th Cir. 2016).

[9] *Id.*

[10] *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W. 469, 500 (Tex. 2019).

[11] 501 S.W.3d 637 (Tex. App.—Dallas, 2016, no pet.).

[12] 2002 WL 1058527 (Tex. App.—San Antonio May 29, 2002, pet. denied).

[13] *Brinson Benefits*, 501 S.W.3d at 642 (emphasis added) (cleaned up).

4

to the extent of his original contention.'"[14] Successfully defending against a suit does not imply proving that a party did not commit theft; rather, it implies that the defendant avoided liability—which is what the defendants did here.

In *Travel Music*, the court held that neither party successfully defended or prosecuted the merits of a Texas Theft Liability Act claim because the plaintiff nonsuited that claim before trial.[15] Those facts are inapposite to those at issue here. Murphy did not non-suit its Texas Theft Liability Act claim—it waived it. The two are not the same.

As our sister court to the south held after analyzing the relevant caselaw, "the defendants seeking attorneys' fees . . . did not need to prove that they did not commit theft to recover attorneys' fees reasonably and necessarily incurred defending against the [Texas Theft Liability Act] claim[.]"[16] Obviously, this holding does not bind this Court. But the Court finds the reasoning to be correct and persuasive.

And even Murphy admits that "courts have awarded fees in cases in which there were no findings on the merits."[17] It admits this, of course, in a footnote and without identifying the referenced cases.

Because the language of the act does not define "prevailing party," and the widely accepted definition of the term requires only that a defendant "successfully defend" against a Texas Theft Liability Act claim, the Court finds that the defendants

---

[14] *Id.* (quoting *Travel Music*, 2002 WL 1058527, at *3).

[15] *Travel Music*, 2002 WL 1058527, at *3.

[16] *Pemex Exploración Y Producción v. BASF Corp.*, 2015 WL 12763538, at *6 (S.D. Tex. Dec. 31, 2015).

[17] Doc. No. 110 at 10, n.4.

were not required to affirmatively prove they did not commit theft in order to be a prevailing party under the statute. It is therefore mandatory that the defendants be awarded their reasonable and necessary fees and costs.

### *2. Love's fees were reasonable and necessary.*

Murphy claims that the defendants' fees were both unreasonable and unnecessary. Prior to Murphy's attempt to dismiss this case without prejudice in July 2019, Murphy incurred more fees than the defendant.[18] Nevertheless, "Murphy takes issue with [the defendants'] failure to provide justification for the reasonableness of fees before *and* after" the attempted dismissal.[19] While the thrust of Murphy's argument targets fees incurred after July 2019, it explains that "that should not be taken as any sort of endorsement of the fees incurred before that date."[20] Given that Murphy had incurred more fees than the defendants prior to July 2019, it strains credulity for Murphy to suggest those fees were unreasonable. Furthermore, up until this point, the defendants were operating under the belief that Murphy could prove up an eight-figure damages award; in the face of that possible liability, the defendants' fees are not unreasonable. Accordingly, the Court finds that the fees the defendants incurred prior to July 11, 2019 are reasonable.

---

[18] Murphy offers a chart in support of its claim that the fees were unreasonable. The chart shows that both parties billed about 1,100 hours before July 11, 2019, with the defendants billing slightly more. What the chart fails to account for, however, is that "the average hourly rate of Love's attorneys was $282 (less than Murphy's paralegals, and about half as much as Murphy's associates)." *See* Doc. No. 101 at 7; Doc. No. 114 at 9.

[19] Doc. No. 110 at 10.

[20] *Id.*

6

Next, the Court turns to the allegation that the defendants' fees post-July 2019 were not necessary. Murphy claims that because it attempted to dismiss the lawsuit without prejudice, the defendants' decision to oppose the dismissal was made merely "to continue to incur fees and expenses solely as an exercise to attempt to recover those very fees and expenses, along with those previously incurred."[21] Until July 2019, the defendants' fees totaled about $300,000. As Murphy acknowledges, at this time "the bulk of litigation tasks had not yet occurred and no depositions had been taken."[22]

Murphy's ire is misplaced. When Murphy moved to dismiss, Chief Judge Lynn (who presided over this case at the time) found that "if the case is dismissed without prejudice, Defendants would suffer plain legal prejudice" and that "dismissing this case without prejudice will prevent Defendants from recovering attorneys' fees and costs . . . ."[23] To eliminate that prejudice, Chief Judge Lynn allowed Murphy to choose: either dismiss the case *with* prejudice or proceed with the case. Murphy chose the latter.

As a result, the case went forward and followed a natural progression: the parties took depositions, filed motions, and prepared for trial. Now, after the Court found for the defendants, Murphy claims that the fees the defendants incurred were unnecessary because the defendants should not have opposed the motion to dismiss without prejudice. In other words, the defendants should have eaten their losses and

---

[21] *Id.* at 12.

[22] *Id.* at 11.

[23] Doc. No. 49 at 3.

dismissed the case, knowing that Murphy could refile it. Just as Chief Judge Lynn found in 2019, this Court also finds that this was not a suitable solution. Murphy cannot now, with the benefit of hindsight, insist that the defendants were "choos[ing] the nuclear option" by refusing to dismiss the case without prejudice.[24] The Court therefore finds that the defendants' fees and costs after July 11, 2019 were not unnecessary.

Next, Murphy claims that the fees incurred after the Court stayed the case in February 2020 were unnecessary. In support, Murphy contends that the defendants should have stopped preparing for trial because (1) the case was stayed and (2) the COVID-19 pandemic was underway.[25] The Court finds this reasoning unconvincing. The defendants reasonably assumed that the motion for summary judgment would be resolved in March 2020 and that due to the case's age, it could be set for trial soon after. And despite the pandemic's onset, litigation continued. This very Judge conducted a jury trial in August and held many hearings virtually. Arguing that the defendants should have ceased all litigation simply because the case was stayed is an erroneous claim: to do so could have left the parties entirely unprepared for trial. Therefore, the Court finds that the fees the defendants incurred after the case was stayed in February 2020 were not unnecessary.

---

[24] Doc. No. 110 at 12.

[25] The Court notes that when it stayed the case in February 2020, it did so pending the Court's resolution of the outstanding motion for summary judgment—not because of COVID-19, which became a disruption in the United States in *March* 2020.

Finally, Murphy argues that given its damages disclosure, it "is almost incomprehensible that Love's attorneys billed more than 3,640 hours."[26] At this case's infancy, Murphy asserted that it sought an eight-figure damages award. Then, when attempting to dismiss the case without prejudice, Murphy adjusted downward significantly, stating that its provable damages were less than $100,000. Because the case moved forward with the understanding that Murphy now sought less than six figures, Murphy claims that the hours the defendants expended were unreasonable. In other words, the defendants should not have worked so hard because there was not—relatively speaking—much at stake.

But Murphy forgets two important things: (1) the time required to take depositions and prepare for trial cannot always expand and compress relative to the money at stake; for example, issue complexity does not always correlate to monetary value; and, more importantly, (2) Murphy accused the defendants of civil theft. Regardless of the money at stake, a verdict finding that Love's, or any of the defendants, engaged in theft would have been a significant reputational wound. It is not inconceivable that the defendants prepared vigorously for trial to avoid that stain and the cascading impact it may have had. The suggestion that the defendants should have pumped the brakes and advocated less zealously for their clients because there was not much money at stake misses the point.

---

[26] Doc. No. 110 at 15.

### *3. The lodestar is correct and does not require a downward variance.*

Murphy advances multiple problems with the lodestar: (1) the calculation is flawed; (2) the hours billed were unreasonable; and (3) the defendants failed to segregate its fees. The Court will address each claim individually.

#### i. Alleged improper calculation.

The sum of Murphy's improper-calculation argument is that the defendants are not entitled to receive $1 million in fees simply because that is less than the amount of fees it actually incurred.[27] While the Court agrees with Murphy that the defendants are not entitled to be made whole—rather, they are entitled to receive its reasonable and necessary fees and costs—the Court found above that the fees were reasonable and necessary. Therefore, the Court rejects Murphy's allegation that the lodestar calculation is fundamentally flawed because it incorporates unreasonable and unnecessary fees.

#### ii. Unreasonable billed hours.

For the same reasons explained above, the Court finds that the defendants' billed hours were not unreasonable. Nevertheless, the Court will conduct an *Arthur Andersen* analysis.

---

[27] The Court is unsure why Murphy styled this argument as an improper calculation when it claims the fundamental flaw with the calculation is that the defendants suggest the award is reasonable because it does not account for all their expenses. It is true that the statute mandates that the defendants be paid only their reasonable and necessary fees, regardless of the amount they actually incurred, but this does not go to the nature of the underlying lodestar calculation.

> *(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly.*

The Court understands that the legal issues in this case were not particularly novel; even so, mounting a successful defense required extensive research and legal work, in part because Murphy sued multiple companies and drivers. As a result, defense required significant time and labor. Because the case involved a large damages claim (although Murphy eventually reduced it) and reputational harm, it required skilled lawyers to perform the legal services in order to avoid a judgment against the defendants.

> *(2) The likelihood . . . that the acceptance of particular employment will preclude other employment by the lawyer.*

The defendants' motion explains that "the sheer size of this engagement necessarily precluded other employment opportunities[.]"[28]

> *(3) The fee customarily charged in the locality for similar legal services; the amount involved and the results obtained.*

The defendants' attorneys billed reasonable rates for this locality, and neither party disputes this. The amount ultimately at issue was less than $100,000. But Murphy began the litigation claiming it could recover eight figures. The defendants defeated all of Murphy's claims, preventing reputational and monetary harm. Although fee awards that are disproportionate to the amount at issue should make a court pause, Texas courts routinely approve fee awards that exceed the underlying

---

[28] Doc. No. 102 at 30.

11

amount in dispute.[29] The Court finds that although the fees requested exceed the disputed amount, they are not unreasonable.

> *(4) The time limitations imposed by the client or by the circumstances; the nature and length of the professional relationship with the client.*

The client imposed no time limitations. Although this was the first time the defendants' attorneys represented the defendants, they have subsequently represented them in multiple other matters.

> *(5) The experience, reputation, and ability of the lawyer or lawyers performing the services.*

The lawyers involved were qualified and experienced.

> *(6) Whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.*

The fee was not contingent.

After evaluating the *Arthur Andersen* factors, the Court finds that the requested fee award is reasonable.

**iii. Fee Segregation**.

Finally, Murphy attacks the defendants' alleged failure to properly segregate fees on recoverable claims from fees on unrecoverable claims. The Supreme Court of Texas has explained that "intertwined facts do not make tort fees recoverable[.]"[30] And Murphy claims that the defendants assert that "the *facts* of the case are

---

[29] *See, e.g.*, *Herring v. Heron Lakes Estates Owners Ass'n, Inc.*, 2011 WL 2739517, at *2, *5 (Tex. App.—Houston [14th Dist.] Jan. 4, 2011, no pet.) (upholding fees 102 times the underlying award).

[30] *Tony Gullo Motors*, 212 S.W.3d at 313–14.

intertwined as the basis for the argument that [the defendants do] not have to segregate [their] fees."[31] But the defendants didn't argue that segregation was unnecessary because the facts were so intertwined; they argued it was, to a large extent, inapplicable because the "discrete legal services advance both a recoverable and unrecoverable claim that . . . are so intertwined that they need not be segregated."[32] The Supreme Court of Texas supports that basis for non-segregation.[33]

Murphy wishes to ignore the reality that the vast majority of discrete legal services the defendants' attorneys undertook in this case advanced both recoverable and unrecoverable claims. This is so because: (1) very little time was spent developing the unjust enrichment claim, and the defendants segregated unjust-enrichment hours; (2) the conspiracy claim is derivative; and (3) the theft and conversion claims were advanced by discrete legal services so intertwined that they did not justify segregation.

## IV. Conclusion

For the foregoing reasons, the Court finds that the defendants are entitled to attorneys' fees and costs. The Court evaluated the fee table submitted by the defendants and finds the entries to be sufficient and detailed. The Court therefore awards: (1) reasonable and necessary attorneys' fees in the trial court of $1,024,006.25; (2) costs in the trial court in the amount of $22,557.23; and (3) conditional reasonable and necessary attorneys' fees for the appeal of this case, in

---

[31] Doc. No. 110 at 18.

[32] *Tony Gullo Motors,* 212 S.W.3d at 313–14.

[33] *See id.*

an amount to be determined by this Court following remand after appeal. Because Gemini was responsible for payment of all attorneys' fees and costs of Kane Russell Coleman Logan PC in the representation of the defendants, Gemini receives the award.

**IT IS SO ORDERED** this 24th day of May, 2021.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE